**SIGNED THIS: May 22, 2015**

_____
**Mary P. Gorman**
**United States Chief Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re | ) | |
| | ) | Case No. 12-70904 |
| JAMES C. FLAUGHER, | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |

## **O P I N I O N**

Before the Court is the Chapter 7 Trustee's Application for Interim Trustee

Compensation. In his Application, the Trustee seeks payment of a commission

based on the amount of estate funds wrongfully taken and used by the Debtor to

pay a post-petition debt. The Trustee claims that because the post-petition debt

was incurred to borrow money to pay a pre-petition debt, he should receive the

commission he would have received if the pre-petition creditor had filed a claim

and been paid by an authorized distribution of estate funds. Because the Trustee

–1–

has failed to establish his entitlement to the commission as a matter of law or fact, the Application will be denied.

## I. Factual and Procedural Background

The underlying facts of this case are set forth in this Court's Opinion denying James C. Flaugher ("Debtor") his discharge and will not be repeated in detail here. *See Richardson v. Flaugher (In re Flaugher)*, 525 B.R. 67 (Bankr. C.D. Ill. 2015). A short summary is all that is necessary.

At the time the Debtor filed this case, he had a claim pending against his former employer before the Equal Employment Opportunity Commission ("EEOC"). Jeffrey Richardson, the Chapter 7 Trustee ("Trustee"), repeatedly requested that the Debtor notify him of any decision rendered by the EEOC and the receipt of any award the EEOC might make. Nevertheless, when the Debtor received an EEOC award of $150,000, he spent most of the money before the Trustee learned of the payment. The Debtor subsequently turned over to the Trustee only $15,000.

The Trustee filed a complaint to revoke the Debtor's discharge based on the Debtor's failure to report the receipt of the funds and his failure to deliver the funds to the Trustee. 11 U.S.C. §727(d)(2). After a trial during which the Debtor admitted spending most of the EEOC funds before notifying his own attorney or the Trustee that the money had been received, this Court found that the Trustee had met his burden of proof and revoked the Debtor's discharge. *Flaugher*, 525 B.R. at 73.

The Trustee had hired himself and his law firm as his attorneys to prosecute

the complaint to revoke the Debtor's discharge. After prevailing, the Trustee filed an application seeking $4845 in attorney fees and $496.60 in expenses for the legal services rendered. No party objected to the Trustee's application for attorney fees and expenses, and an order was entered allowing the compensation as requested.

The Trustee subsequently filed his Application for Interim Trustee Compensation ("Application"), requesting payment of an interim commission of $5750. In the Application, the Trustee alleged that $49,000 of the EEOC funds were used by the Debtor "to pay prepetition child support arrearages or reimburse a party who he borrowed money from for payment" of the arrearages. The Trustee admits in his Application that the child support payments were not disbursed by him but claims entitlement to a commission by reason of the Debtor's wrongful expenditure of the EEOC funds.

In a Memorandum of Law filed in support of the Application, the Trustee refined his factual argument. According to calculations the Trustee made using records from the Debtor's state court dissolution of marriage proceedings, as of April 2012 when the Debtor filed this case, the Debtor owed his ex-wife, Karen Flaugher, $35,613.51[1] in back child support. Further, according to those same records, on December 7, 2012, the Debtor paid $24,032.50 toward the pre-petition support arrearage. The Debtor told the Trustee at a deposition that he borrowed money after filing his case from his mother-in-law, Sharon Gallivan, to make the

---

[1] This figure is taken from Exhibit D attached to the Trustee's Memorandum. In referencing Exhibit D on page three of Trustee's Memorandum, the figure $35,613.31 is used. The latter figure appears to be in error.

December 2012 payment to his ex-wife. And the Debtor admitted that after he received the EEOC funds, he used some of that money to pay back Ms. Gallivan. In his Memorandum, the Trustee reduced his claimed commission to $3153.20 based on the $24,032.50 used to pay the support arrearage. No party in interest objected to the Trustee's Application.

Notwithstanding the lack of objection to the Trustee's Application, this Court has an independent duty to review all fee requests. *See In re Wildman*, 72 B.R. 700, 705 (Bankr. N.D. Ill. 1987). Having completed that review, the matter is ready for decision.

## II. Jurisdiction

This Court has jurisdiction over the issues presented here pursuant to 28 U.S.C. §1334. Administration of the estate includes awarding trustee compensation and, accordingly, the pending matter is a core proceeding. 28 U.S.C. §157(b)(2)(A).

## III. Legal Analysis

Awards may be made to Chapter 7 trustees for "reasonable compensation for actual, necessary services rendered[,]" and "reimbursement for actual, necessary expenses." 11 U.S.C. §330(a)(1). A court shall not, however, allow compensation for "unnecessary duplication of services" or "services that were not . . . reasonably likely to benefit the debtor's estate . . . or . . . necessary to the administration of the case." 11 U.S.C. §330(a)(4)(A). The compensation which may be awarded to a Chapter 7 trustee is treated as a commission and is subject to the

limits set forth in §326. 11 U.S.C. §§326, 330(a)(7).

Section 326(a) allows compensation of a Chapter 7 trustee for "the trustee's services, payable after the trustee renders such services," based on maximum percentage caps calculated "upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims." 11 U.S.C. §326(a). Thus, Chapter 7 trustee compensation is commission-based and tied directly to the amounts actually disbursed by the trustee.

Although §326(a) limits trustee compensation to a percentage of the funds distributed or turned over by the trustee to parties in interest, a number of courts have recognized certain equitable exceptions to the clear language of the statute and have awarded compensation to trustees on a *quantum meruit* basis when they performed substantial beneficial services in a case without disbursing any money. *See In re Andona*, 2000 WL 33712205, at *2 (Bankr. D. Idaho June 14, 2000) (collecting cases). The decisions allowing such compensation generally fall into one of three sets of circumstances. *See In re Radical Bunny, LLC*, 459 B.R. 434, 440-42 (Bankr. D. Ariz. 2011).

Some decisions rest on a "constructive disbursement" theory, where the funds disbursed did not technically pass through the trustee's hands but the transfer was orchestrated or caused by the trustee's actions in relation to the property. *See Radical Bunny,* 459 B.R. at 440, 443; *In re Rybka*, 339 B.R. 464, 469-71 (Bankr. N.D. Ill. 2006). A classic example would be when property is sold by a Chapter 7 trustee but disbursements to secured creditors are made by a title

–5–

company or other closing agent rather than the trustee. *See Rybka,* 339 B.R. at 470.

Other decisions involve cases converted from one chapter to another after funds are collected but before they are disbursed. *See Radical Bunny,* 459 B.R. at 441-42 (collecting cases). For instance, when a Chapter 11 case is converted to Chapter 7 after the Chapter 11 trustee has performed substantial services for the estate, a Chapter 11 trustee might be entitled to compensation based on the amounts actually collected and ultimately turned over to the Chapter 7 trustee upon conversion. *In re Financial Corp. of America,* 114 B.R. 221, 225-26 (B.A.P. 9th Cir. 1990), *aff'd* 946 F.2d 689 (9th Cir. 1991). In cases converted from Chapter 7 to Chapter 13, courts have also allowed compensation of Chapter 7 trustees for pre-conversion services, even though no disbursements were actually made in the Chapter 7 case. Some of those decisions read §326 as not applying after the case is converted and no longer a case under Chapter 7, and award compensation either under §330 or a *quantum meruit* theory. *In re Scott,* 2006 WL 566441, at *2 (Bankr. N.D. Ill. Mar. 7, 2006); *Andona,* 2000 WL 33712205, at *2-3. Common to the awards in these cases is that the trustees actually provided services that were necessary or reasonably likely to benefit the estate prior to conversion. *See Scott,* 2006 WL 566441, at *2 n.1.

The third category of decisions awarding trustee compensation in apparent contravention of the limits of §326 involves voluntary dismissals when all collected funds are distributed to a debtor. *See In re Tweeten Funeral Home, PC,* 78 B.R. 998, 999 (Bankr. D.N.D. 1987); *In re Pray,* 37 B.R. 27, 30 (Bankr. M.D. Fla. 1983);

*In re Rennison*, 13 B.R. 951, 952 (Bankr. W.D. Ky. 1981). The reasoning of these decisions is that §326 only applies to fully administered estates and is therefore inapplicable after dismissal. *Pray*, 37 B.R. at 30; *Rennison*, 13 B.R. at 952-53. An underlying rationale is that when the trustee has rendered services in a case, it would be unfair not to award compensation. *See Tweeten Funeral Home*, 78 B.R. at 999.

　　None of the above-cited decisions directly apply to the circumstances of the present case. The Trustee does not seek compensation based on a constructive disbursement theory. To the contrary, his request for compensation relies on the fact that the Debtor's payment to Ms. Gallivan using estate funds was unauthorized. Nor does the present case involve conversion or dismissal, to which the Trustee might argue §326 does not apply. Instead, the Trustee requests that he be allowed compensation based upon the Debtor's wrongful use of estate property to satisfy the post-petition debt he owed to Ms. Gallivan for funds she lent to him to pay a pre-petition creditor.

　　The Trustee relies on *In re Cohoes Indus. Terminal, Inc.*, 103 B.R. 474 (Bankr. S.D.N.Y. 1989). In *Cohoes*, a Chapter 7 trustee sought compensation for her efforts in bringing an adversary proceeding to recover funds from the debtor's principal before conversion of the case to Chapter 11. The adversary proceeding was dismissed and the case converted because of the satisfaction of the largest creditor's claim by an insider, which left only two small unsecured claims that could have been paid in full from funds then held by the trustee. *Id.* at 476-77. Noting that the amount paid by the third party to satisfy the claims could not be

counted in computing the trustee's maximum compensation, the *Cohoes* court went on to award the trustee compensation based on time records rather than actual disbursements. *Id.* at 478. Unfortunately, *Cohoes* provides no explanation of the legal basis for awarding fees in apparent contravention of §326. And the decision was clearly controlled by the fact that the case had converted after the trustee had performed services — a fact that does not exist here.

The Trustee also cites *In re Seitz*, 275 B.R. 525 (Bankr. S.D. Ohio 2002), which involved resolution of issues arising from the post-petition payment by an unsecured lender of a number of other unsecured claims of the debtor in exchange for the debtor's agreement to pledge property to the lender to secure its loans. The case was first filed under Chapter 7, later converted to Chapter 13, and ultimately converted back to Chapter 7, at which time the debtors sought dismissal of the case. *Id.* at 527. After denying the dismissal, the *Seitz* court held that the trustee could pursue a lien avoidance action against the lender and, if successful, would be entitled to fees based on the amounts paid by the lender in satisfaction of claims. *Id.* at 528-29. But the *Seitz* court also provided scarce legal analysis in support of its conclusion.

A compelling concern about the cases relied on by the Trustee and many of the cases which have carved out exceptions to the clear limits of §326 is that all of the cases pre-date the U.S. Supreme Court's decision in *Law v. Siegel*, 134 S. Ct. 1188 (2014). In *Law v. Siegel,* the Supreme Court stated unequivocally that bankruptcy courts may not use their "statutory and inherent powers" to "contravene specific statutory provisions." *Id.* at 1194. This is true even when a

debtor's conduct is "egregious" and results in the trustee not receiving what might fairly be claimed as compensation in a case. *Id.* at 1197-98. Whatever authority a bankruptcy court has to sanction a debtor or provide for extraordinary compensation for a trustee, that authority does not include fashioning equitable remedies which directly "contravene express provisions of the Bankruptcy Code."[2] *Id.* at 1198.

Chapter 7 trustee compensation is expressly limited by statute to a percentage of the "moneys disbursed or turned over in the case by the trustee[.]" 11 U.S.C. §326(a). Here, the Trustee seeks an interim percentage fee on funds he never received, never disbursed or turned over to anyone, and for which no claim for payment was ever filed, yet he makes no argument that §326 does not apply. And trustee compensation must be for "actual, necessary services rendered[,]" which are "payable after the trustee renders such services[.]" 11 U.S.C. §§330(a)(1)(A), 326(a). But the Trustee seeks compensation based on services he has not provided, despite making no argument that §330 does not apply. Rather, he asks the Court to ignore the mandates of both sections. The Trustee's rationale for requesting fees is obvious; he wants additional sanctions imposed on the Debtor. But *Law v. Siegel* tells us that awarding the Trustee a commission

---

[2] This is not to say that the holding in every case cited above was abrogated by the decision in *Law v. Siegel*. To the contrary, cases finding that §326 does not apply after conversion from Chapter 7 to Chapter 13, and relying on other statutory authority to compensate a Chapter 7 trustee for services rendered, may be still be good law. *See, e.g., Scott*, 2006 WL 566441, at *2-3. But cases that awarded compensation admittedly in direct contravention of §326 based on equitable grounds are certainly suspect now and should be relied on cautiously. *See, e.g., Andona*, 2000 WL 33712205, at *2-3.

calculated in contravention of the express statutory language of §§326 and 330 is not allowed. There is no legal authority for the Trustee's Application to be granted and, accordingly, it must be denied.

Having found that the Trustee's Application must be denied as a matter of law, determining whether there is any factual basis to grant the Application is not necessary. But a brief analysis of the Trustee's factual argument will be made to clarify that, even if legal authority existed to make a payment to the Trustee based on perceived equities, the facts of this case would not justify any such payment. The Trustee should not construe anything contained herein to suggest that an actual pursuit of Ms. Gallivan would be looked upon any more favorably than his hypothetical pursuit of her, which has been rejected as a matter of law.

The Trustee's factual argument is straightforward. He says that he could avoid the Debtor's post-petition payment of $24,032.50 to Sharon Gallivan and recover that amount from her. *See* 11 U.S.C. §§549(a), 550(a). He then asserts that Ms. Gallivan would most certainly file a claim for the funds recovered from her and that her claim could be treated and paid as though it arose pre-petition. *See* 11 U.S.C. §502(h). And because the Trustee would then actually be disbursing the $24,032.50 at issue, he would be entitled to a commission on the funds. But the Trustee's analysis is flawed in that it focuses on his ability to avoid the post-petition transfer under §549 without taking into account the provisions of §550(a), which effectively limit actions to those that benefit the estate. *P.A. Bergner & Co. v. Bank One, Milwaukee, N.A. (Matter of P.A. Bergner & Co.)*, 140 F.3d 1111, 1118 (7th Cir. 1998); *Rafool v. Propack Systems, LLC (In re Fleming Packaging Corp.)*,

2007 WL 4556985, at *6 (Bankr. C.D. Ill. Dec. 20, 2007) (Perkins, J.).

The Debtor turned over to the Trustee $15,000 from the EEOC settlement. The Trustee was awarded $5341.60 in attorney fees and costs related to the revocation of discharge action, leaving $9658.40 to pay other claims. Despite the fact that the Debtor scheduled over $110,000 of priority tax debt and unsecured debt, only a total of $5637.39 in priority and unsecured claims were filed by the claims bar date. Thus, from the funds on hand, the Trustee could pay all claims in full plus his commission on his actual disbursements. Because the Trustee has no need for additional funds in the estate, he has no standing to continue to pursue the collection of other assets. *See In re Friedrich*, 2006 WL 2699209, at *2 (Bankr. C.D. Ill. Aug. 31, 2006) (Perkins, J.). Pursuing an action to collect from Ms. Gallivan, which would provide no benefit to the estate and be prosecuted for no purpose other than to punish the Debtor, would be inappropriate and subject to dismissal. *Id.* In addition to his duty to collect property of the estate, the Trustee has the duty to "close such estate as expeditiously as is compatible with the best interests of parties in interest[.]" 11 U.S.C. §704(a)(1). The parties in interest here are those creditors that have filed claims. The claims bar date has run and the Trustee has enough funds on hand to satisfy those claims in full now. Pursuing unnecessary litigation to punish the Debtor would conflict with the Trustee's duties to other creditors.

Further, the Trustee has not addressed the prospect that he might not recover the funds from Ms. Gallivan. Even if she has the funds to pay a judgment entered against her — and there is no particular evidence that she does — she

might defeat the Trustee's efforts with the available statutory defenses. The Trustee cannot recover the post-petition transfer if it was made for value, including payment of an antecedent debt, and the transferee acted in good faith and "without knowledge of the voidability of the transfer avoided[.]" 11 U.S.C. §550(b)(1). The Trustee acknowledges that the payment to Ms. Gallivan was repayment of a debt, and it would be difficult to argue that her receipt of funds owed to her was an act of bad faith on her part. Thus, the only question would be whether she had actual knowledge that, when he paid her, the Debtor was acting in violation of his duties in the case and making a transfer to her that was voidable. The Debtor might well not have confessed to his mother-in-law that he was acting improperly in paying her. If she denied knowing that his payment to her was wrongful, the Trustee would likely have a tough time proving otherwise.

Also problematic is the Trustee's assumption that if he recovered funds from Ms. Gallivan, she would certainly file a claim and he would qualify for a commission on the funds when he paid the claim. But Ms. Gallivan might not file a claim. And if she didn't, the recovered funds would then be distributed to the Debtor as surplus funds for which the Trustee would not be entitled to a commission. 11 U.S.C. §§326(a), 726(a)(6). Because all other claims can be paid from what is already on hand, the Trustee's claimed entitlement to the extra commission is conditioned on Ms. Gallivan actually filing a claim to get the recovered funds back. It is likely, however, that the Debtor and Ms. Gallivan would be advised that the funds would be returned to the Debtor without the deduction of a commission if no claim was filed.

The Trustee's argument is based entirely on conjecture. He assumes that he would be successful in recovering from Ms. Gallivan and speculates how Ms. Gallivan would proceed thereafter. As set forth above, a number of impediments exist which suggest that it is unlikely that things would work out exactly as the Trustee assumes they would if he were to pursue Ms. Gallivan. And even if the Trustee's assumptions all turned out to be correct, the final result might not be as he projects.

If the Trustee recovered $24,032.50 from Ms. Gallivan but incurred attorney fees and costs to do so, and then claimed a commission on the disbursement of the funds, he would not have enough funds on hand from the recovery to pay Ms. Gallivan's claim in full.[3] Because her claim would be treated as a timely-filed unsecured claim entitled to share *pro-rata* with other timely filed unsecured claims, he could well end up not having enough funds to pay all unsecured creditors in full. 11 U.S.C. §502(h). The Trustee would then have to pursue the Debtor, or some other third party who had been paid post-petition, to collect additional funds so that the unsecured creditors would receive at least as much

---

[3] If the Trustee pursued Ms. Gallivan, he would most likely seek compensation for his attorney fees and costs. But awarding that compensation would be subject to many of the same issues which compel denial of the Application here. The attorney fees would have to have been incurred for reasonable and necessary services. 11 U.S.C. §330(a)(1)(A). Fees should not be allowed for services which were not "reasonably likely to benefit the debtor's estate[.]" 11 U.S.C. §330(a)(4)(A)(ii)(I). If the result of a pursuit of Ms. Gallivan would be that all of the funds recovered are distributed to the Debtor as surplus, or that the costs of the pursuit eat into the dividend now available to be paid to unsecured creditors, it would be difficult for the Trustee to prove either the reasonableness or the necessity of the fees he incurred.

as they would have received if he had never pursued Ms. Gallivan in the first place. That makes little sense.

The Trustee has not presented a credible factual scenario that would justify payment of a commission on the funds the Debtor paid to Ms. Gallivan. Combined with the lack of legal authority for the requested commission, the Trustee's Application must be denied.

## IV. Conclusion

The Trustee has failed to establish his entitlement to a commission based on the Debtor's wrongful use of estate funds to pay a post-petition debt. Although the Debtor's conduct was indeed improper, the Debtor has been punished by revocation of his discharge. The Trustee's compensation can be paid only to the extent allowed by statute, and the statute does not provide for the extra compensation requested under the circumstances presented here. The Trustee's Application will be denied.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###